LIZZIE H. THOMPSON v. TIMOTHY P. THOMPSON.

*Divorce—Cruelty.*

In this case the decree below, dismissing complainant's . bill, is reversed, and a decree entered for absolute divorce as prayed. Questions of fact alone are involved.

Appeal from Wayne. (Gartner, J.) Submitted on briefs November 15, 1889. Decided December 28, 1889.

Divorce. Complainant appeals from decree dismissing bill. Reversed, and decree for divorce entered. The facts are stated in the opinion.

*Martha Strickland,* for complainant.

*Aug. C. Baldwin,* for defendant.

LONG, J. The bill was filed in this cause in the Wayne circuit court, in chancery, by complainant, for an absolute divorce, and alimony, on the ground of cruel treatment.

It appears that the parties were married in 1884, at which time the complainant was 41 years of age, and the defendant a little past 60. Complainant had been twice married, and defendant once. At the time of the marriage, defendant was worth about $3,000, while the complainant had but little property, consisting of household furniture. After the marriage, defendant purchased a house and lot in Northville, for which he paid $1,200, and took the deed to himself and wife jointly, so that at the death of either the survivor will take the property.

Complainant alleges in her bill that the acts of cruel treatment commenced within six months after their marriage, and continued up to November 17, 1887, when she filed her bill for divorce in this cause; that in 1885 he made use of opprobrious epithets, and swore at her, and struck her a severe blow upon the side of the head, which stunned her, and from which she still suffers. She complains, also, that in January, 1886, she requested him to give her money to purchase flannel underwear, which he refused, and upon that occasion called her vile names, and imputed to her a want of chastity; that on October 15, 1887, he became angry at her without cause, and, with oaths, seized her by the throat, and choked her until she was black in the face, her tongue protruded, and she lost consciousness; and that, during the same month, the defendant stated to a neighbor and friend of complainant that she could do nothing to defend herself, as he could put her behind the bars, as she had stolen $1,000 from the bank, and he knew it. Complainant alleges that these acts of cruel treatment continued so that she could no longer live with him, and from such continued acts of cruelty she became a great sufferer. These various acts are denied by the defendant.

Some considerable evidence was taken on the hearing in the court below, and upon which the circuit judge dis-

missed complainant's bill.  We need not repeat the evidence here, as it would profit no one; but we are satisfied that the main charges of cruelty alleged by the complainant in her bill are proven, and a decree of divorce must be granted.  In fact, there seems to be little dispute that he chocked her on the occasion alleged, and without provocation.  His course towards her from the time of the marriage to their separation has been of constant and continued annoyances, both in his speech and conduct. While she may not have always acted towards him in the most tender manner, or have always regarded his wishes, yet it is made apparent that his conduct towards her has been most cruel, and it would be a grievous wrong to compel her to remain his wife.

The decree of the court below will be reversed and set aside, and decree entered here in favor of complainant for absolute divorce; but, in view of the pecuniary circumstances of the parties, and the title of the most of the remaining property now resting in them jointly, no alimony will be allowed.  The complainant will recover the costs of both courts, together with a solicitor's fee of $100, in addition to that allowed by rule.

SHERWOOD, C. J., and MORSE, J., concurred with LONG, J.

CHAMPLIN, J., *(dissenting)*.  These parties were married in 1884.  He had been a widower, and she twice a widow.  At the time of this marriage he was 61, and she was 41, years of age.  He was worth about $3,000, and all she possessed was her household goods.  Shortly after the marriage he purchased a house and lot in the village of Northville, for which he paid $1,200, and caused the same to be conveyed to himself and wife jointly; the effect of which is that upon the death of either the survivor will succeed to the whole estate.  He has no trade,

but, when he can find work to do, works as a common laborer to earn a livelihood. They remained in the house so purchased, and lived there until about the time the bill of complaint was filed; when, during his absence, while at labor, chopping wood, she removed the greater part of her goods from the house, and filed this bill, praying for a divorce from the bonds of matrimony, and injunction against his selling or disposing of any of his estate pending suit, a decree compelling him to convey to her his interest in the house and lot standing in their joint names, and for alimony out of his other property.

Her complaint is that he was guilty of extreme cruelty towards her, consisting of personal violence, harsh and abusive and indecent language to her, and of untrue, calumnious statements about her to her friends and neighbors. She alleges that such acts of cruelty commenced within six months after their marriage, and continued until November 17, 1887, when she filed her bill in this cause. She says that in 1885 he made use of opprobrious epithets, and swore at her, and struck a severe blow upon the side of her face and head, which stunned her, and from which she has suffered more or less since, it having produced a roaring and numbness which still exists; that about the month of January, 1886, she requested him to give her some money to buy flannel underwear, and he refused, again using opprobrious epithets imputing a want of chastity in her; that on or about October 15, 1887, he became angry at her without cause, and, using oaths, seized her by the throat, and choked her until she was black in the face, her tongue protruded, and she lost consciousness; that about the last of October, 1887, he stated to a neighbor and friend of hers that she could do nothing to defend herself,—he could put her behind the bars; that she had stolen one or more thousand dollars from a bank, and

he knew it. That he has been in the constant habit of using the same or similar language about her, in consequence of which false and calumnious rumors have been circulated against her in the neighborhood where she resided, causing her great mental and physical suffering.

The defendant answered, denying all the specific allegations and charges, and all acts of cruel and inhuman treatment. Replication was filed, and proofs taken in open court, and hearing had upon pleadings and proofs, and the court below dismissed her bill of complaint.

Her cause has been prosecuted with zeal and ability by her solicitor; and we have given patient and careful attention to the proofs and arguments, and are constrained to sustain the holding of the court below, and to dismiss the bill of complaint. It appears from the testimony that he maintained and supported his wife with all the necessaries of life, and according to that rank and degree in which they were accustomed to move in society. He allowed her to purchase on his credit anything which she deemed necessary, and paid the bills therefor without complaint. When she was ill he employed a physician, and at one time a nurse. He purchased an organ for her gratification, and also assisted her in her household duties. She desired to visit friends in New York, and he paid the expenses of her trip. She does not testify to any ill usage until 1885, when she says that he struck her a severe blow upon the right side of the head. He denies it in his testimony, and she is not corroborated; and this charge is not made out by the proofs. The charge of his refusal to buy flannel in January, 1886, is not sustained. On the contrary, she admits that he told her to go to the store, and purchase anything she needed; and she did so, and he paid for it, as appears from his testimony. She used this permission freely, as appears from the testimony of Mrs. Tinham, to whom she related her

trouble with her husband, and told her that she had married him for a home, and to be taken care of, and said if she left him she was provided with clothes enough to last her four years; that she had been looking out for them, and had plenty.

We do not think, however, that he was altogether blameless, but that he was blameworthy in some of his conduct towards her. We are satisfied that he choked his wife on the occasion testified to by her, and this without provocation. This is the only act of personal violence that we think the proof sustains; and, although we are satisfied that the act was not as severe as she claims, yet it stands without justification or excuse. Neither can we justify, palliate, or excuse his statements made to the witness Blair. Whether they were as Blair testifies or as he admits, they were unjustifiable and disgraceful to him as a husband. It is quite probable that he did not suppose that the statements would be repeated by Blair; and Blair testifies that he did not repeat them to anybody except to his wife, and it is not shown that they went any further.

We do not think the proof establishes a sufficient cause for a decree for a divorce. When a woman marries a man 20 years her senior for the purpose of obtaining a home, and of being taken care of, she should expect—

"To submit to the ordinary consequences of human infirmities and of unwise selections; and the misconduct which will form a good ground for a legal separation must be very serious and such as amounts to extreme cruelty, entirely subverting the family relations by rendering the association intolerable." *Cooper v. Cooper,* 17 Mich. 210.

There is another consideration that is entitled to some weight in reaching a conclusion in this case. The deed of the house and lot which he voluntarily procured runs

to them jointly, and constitutes now the bulk of the property which formerly belonged to him. What complications or embarrassments a divorce would place upon the title of this property we need not determine. She does not offer to convey her interest to him; and, without such conveyance, were she entitled to a decree, no decree for alimony could be made which would do justice between the parties.

The decree of the court below dismissing the bill should be affirmed, without costs to either party.

CAMPBELL, J., concurred with CHAMPLIN, J.